May it please the court, my name is Thomas Beck and I represent the appellants Mr. and Mrs. Thomas Watson. Since at least 1969 when the Supreme Court decided Pearson v. Ray and acknowledged that in the common law the burden of proof on probable cause is an affirmative defense, that remains in that position as the court must recognize in this case as plaintiff's counsel I objected to that burden being shifted in an instruction given by the trial court in which it was placed on the plaintiffs to disprove probable cause. Our case presents an issue just one step removed from the ruling in the Dubner decision in which the plaintiff does not eschew the ultimate burden of persuasion but improving an affirmative defense commonly recognized as probable cause to a warrantless arrest. The plaintiff really needs to demonstrate that they were arrested without a warrant and the parties with superior knowledge of what they used as the basis for the arrest, i.e. probable cause, should be left to them. Our case didn't happen. We were left with the burden of disproving and our objections in that respect were rejected by the trial court. The second instruction I think is equally important and merits reversal of the defense verdict in this case is the 148 instruction that we offered and the court rejected on the proposition that any disobedience of a lawful order violates 148 and the instruction proffered by the defendants virtually gave the defense a directed verdict on the false arrest claim. The instruction offered by the defendants and ultimately given in this case flatly falls into the face of the interpretations of the statute given in three important cases that I cite to the court, leading case being the California Supreme Court's decision in the Wetzel case in which that plaintiff or that party who was ultimately convicted of a 148 conviction essentially told officers, you may not come in my apartment and there was deliberate and continued interference with their efforts to pursue a fleeing suspect and the highest court in the state of California said that that's not a 148 violation, essentially implying a privilege. The second one is Caroga. Caroga interpreted 148 as saying if you do all the things that that decision reflects over an extended period of time in the apartment of this marijuana possession investigation that that wasn't a violation of 148. And then finally, Mohammed C., which is the most recent articulation by the courts of appeal in California on what 148 means and notwithstanding the express language of the statute is the Mohammed C. case and all of those decisions far and extend the period of interference, delay or obstruction, if there was any, well beyond the 22 seconds that the evidence in this case showed that the officers were with Mr. Watson on the pavement while Mrs. Watson was shrieking at them. And in amazement and shock about what they were doing to her husband and admittedly advanced, retreated, advanced, retreated, which was the instruction in that case is well you find that that happened and she's in violation of 148 and the arrest was lawful and the force used against her ergo is also itself appropriate. That was a serious error in my belief. Lastly, the defense offered an excessive force instruction to either supplement the Ninth Circuit model that was actually used to incorporate into it the decision in one of the holdings in the Doyle case, which was if you can give a Socrates warning before using force against them, then you must do that. That was rejected. And I submit that if Mrs. Watson had been warned that this Officer Murphy was going to charge at her and do what he actually did, then maybe that could have been avoided. But in terms of the issues presented at the trial, the failure of the court to instruct on that warning issue prejudiced the defendants in a harmful, I mean the plaintiffs in a harmful sort of way. And that's why we're here. I'm asking the court to make a reversal of this decision on the grounds that I set forth. Thank you, Your Honor. To preserve the balance of my time. Careful. Good morning, Your Honors. May it please the Court. I'm Neal Moore on behalf of the appellees Murphy, Martin, and Winks. What the appellant has ignored and continues to ignore is that the law in this circuit is clear that on a warrantless arrest, all the defendant or the arresting officer need do is to present some evidence of justification or some evidence as to the cause or basis for the arrest. And having done that, the burden of proof, or more correctly, the burden of persuasion is squarely upon the plaintiff to prove by preponderance of the evidence the absence of probable cause. Now, in this case, in the trial court proceedings, and in these proceedings, there has never been a suggestion made that the defendants have not come forward with some evidence justifying their arrest of Mrs. Watson. They offered an abundance of evidence. They all testified as to the whys and the wherefores and the reasons for their arrest. Can you explain to me why they were doing what they were doing to Mr. Watson? They were simply trying to get him under control and get him handcuffed. Well, what had he done that caused them to think he was out of control? I'm just trying to understand this whole scenario. It all started with his being possibly quite ill because he'd overdosed. Well, there was a disturbance of some sort in that house. We don't know. We hear banging. We hear calls for help on the, the police hear that on the phone. We hear a talk of a suspected overdose. That is what we know as to what was going on in that house. We also know that there was a struggle of some sort out in the driveway involving Mr. and Mrs. Watson, and the police knew that. Well, what they knew was that they were, and this was from the helicopter, I guess, knew that they were close together, but there wasn't any evidence that they were hitting each other. Well, the observer and the, the pilot and the observer in the helicopter observed a struggle, and that's what they radioed to the ground units and to dispatch, that there was a scuffle going on between the, caught between Mr. and Mrs. Watson in that driveway. And that's all they could observe, and that's what was relayed to the officers on the ground. And in trying to approach and discuss what was going on to find out are there injured people in the house, what happened? That's when Mr. Watson ran and attempted to escape, and that was a violation of 148 for which he was convicted in the state court. So that is why they were trying to get him under control, because at that point, they don't know what's going on. Are there injured people? Are there weapons involved? They're just simply trying to effect an arrest and get a person under control, and Mr. Watson is refusing to comply. So they're basically trying to get him under control to make the situation safe to investigate what was going on. So that, in answer to Your Honor's question, was what they were doing. And that is what they were delayed and interrupted from doing by Mrs. Watson. Now, I believe I've adequately addressed the burden of proof. So the burden of proof is squarely on the plaintiff, the appellant, under both the Dubner and the Gilker case. The defendant has or did offer some evidence in placing the burden upon the appellant if the plaintiff was in compliance with this circuit's law. There was no error by the trial court in that respect. With respect to the PC-148 instruction, the issue framed by the evidence in the testimony was one of compliance versus refusal, not the issue of the quickness or the slowness of the response. The issue was clearly, was there refusal or was there compliance? Mrs. Watson says that she complied because each time she was told to step back, she took a step back. But the evidence is clear that she then immediately stepped forward. She would have the court believe that that was compliance. The officers viewed it differently. It would be as if I were to stand here with a bat in my hand and you were to tell me to drop the bat, I drop the bat and immediately pick it back up. Have I complied or have I not complied with the request or the direction? I think there was no compliance. And that's what the jury was instructed. They were told that if she repeatedly, not just once, but repeatedly refused to comply with the direction or request that she stand back and if that interrupted the efforts of the officers to gain control and to handcuff Mr. Watson, that was a violation of 148. And that instruction... Now, my understanding is she was convicted of that. No, that was dismissed as against Mrs. Watson. Mr. Watson was convicted on the 148. The district attorney dismissed the case against Mrs. Watson before trial, so that she was not convicted. The instruction given is true to the dictates of the most recent California case, N. Ray Muhammad. In that case, the appellant, the defendant in the case, refused repeated requests by the officers to step away from the patrol car and the court found that that was a sufficient basis for the conviction of 148. That is clearly what occurred here and that provides clear support for the court's instruction. The last issue, excessive force. The model, the circuit's model instruction, I think, emphasizing objective reasonableness is a proper and adequate statement of the law. Appellant's reliance upon the De Orley case, which involved the use of a weapon capable of inflicting a serious injury or death, and under those circumstances, the giving of a warning, if feasible, that just simply is inapplicable to the facts of this case. Here, her arm got broken, is that right? Her arm was broken, yes, and there was a medical testimony that it could not have happened by reason of what she claimed the officer did to her, that the injury was inconsistent with her description of the actions of Officer Murphy. But, yes, she did sustain a butterfly fracture, which according to the undisputed medical evidence, resulted from an impact to the wrist area and not from the leveraging of the wrist, which is what she described Officer Murphy having done. So... Thank you, counsel. And unless there's some questions, I'll submit. Thank you. I think factually it bears reminding the court that this was never a call for police intervention. The uncontradicted evidence was that Mrs. Watson called the fire department looking for a paramedic. She made two 9-11 calls before the one that was passed through to the paramedics. I beg your pardon, that's not correct. What happened is she called for a fireman, for a paramedic. They were expecting paramedics. She made two 9-11 calls where there were hang-ups. Somebody called back. A man answered the telephone. He said there was no woman present, despite the fact they heard a woman's voice in the background. Then she called and was put through to the paramedics and said there may be an overdose. I do remember there being two calls. I do know a fire department call. They were speaking to a fire department dispatcher. I don't know. The point I'm making is there were two 9-11 calls before it was put through so that she could talk to a dispatcher about an overdose. The two 9-11 calls resulted in a hang-up. So the 9-11 people called the number back, at which point in time a man answered the telephone and said there was no woman present, despite the fact that there were noises and banging going on in the background. So I'm just suggesting that it wasn't entirely a situation of possible health concerns. That's what the defendants maintained. The plaintiffs themselves had a different story to tell, and to address the question put to Mr. Moore was that the helicopter observer, the pilot who did, or the observer who testified in the trial, said no more than he saw the two engage in this interaction on the front porch, I mean on the front lawn, which Mrs. Watson herself explained. He was so wobbly that she had to hold him up, and that was interpreted in a way by the defense and continues to be as somehow that's the cause of her fractured left arm. That is inaccurate. Well, it was certainly a disputed issue of fact, but that's really not what this appeal is about. This appeal has to do with whether or not the burden of proof had been properly allocated. We argue that the instruction was erroneous because it didn't allocate the burden of proof. Yes, the defendants came forward with the evidence of what they're supposed to do to prove that affirmative defense, but the instruction to the jury was it was all on the plaintiff, and that was also true of the 148 instruction. We recognize that the instruction, I mean I argue that the instruction ultimately given on the law of 148 was wrong. I mean it was just wrong, and no matter how many times Mrs. Watson in undisputed 22 sections stepped forward, stepped back, and she was supported by this, by the way, by an independent party witness across the street, it's not a violation of 148. It couldn't be under California law. It was not unreasonable for her to be desperate about what was happening to her husband in the street, and the fact that she never got any closer, according to the officers, than two feet, and as far away as eight feet, that is not a violation of the law under the circumstances, and to be told that if the jury came to the conclusion that she did that, that she loses her false arrest claim, that's just wrong. I'm willing to submit it on that. Oh, I should point out one other thing. In Mohamed C., since counsel raised it, in that particular case, the reason that the court allowed for 148 to apply was first the incident stretched out a lot longer. There were three officers involved at different times to tell this young man not to speak to the inmate that was there, the prisoner that was in the police car, and what was the key factor in that case was that the defendant acted in defiance, willful defiance of the orders, repeated orders, by putting his hand up, essentially telling the officers to shut up or don't bother me. That didn't happen in this case. So viewed from any angle, Mohamed C. actually supports the appellant's argument as to the misapplication of 140 in our case. Thank you, counsel. Thank you. The case is currently submitted.
judges: Fletcher, Reinhardt, Rymer